Geoffrey D. Strommer
Stephen D. Osborne
Hobbs, Straus, Dean & Walker, LLP
215 SW Washington Street, Suite 200
Portland, OR 97204
Phone: (503) 242-1745
Fax: (503) 242-1072
Email: gstrommer@hobbsstraus.com
Email: sosborne@hobbsstraus.com
*Attorneys for the Ketchikan Indian Community*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **KETCHIKAN INDIAN COMMUNITY,** | )<br>)<br>) |
| PLAINTIFF, | )<br>) |
| v. | )<br>) |
| **NORRIS COCHRAN**, in his official capacity as Acting Secretary, U.S. Department of Health & Human Services | )<br>)<br>)<br>) |
| **ELIZABETH FOWLER**, in her official capacity as Acting Director, Indian Health Service | )<br>)<br>)<br>) |
| **UNITED STATES OF AMERICA,** | )<br>) |
| DEFENDANTS. | ) Case No. _____<br>) |

*Ketchikan Indian Community v. Cochran et al.,* Case No. _____
COMPLAINT - 1 -

# COMPLAINT

# (25 U.S.C § 5331(a); 41 U.S.C. § 7104(b))

## JURISDICTIONAL STATEMENT

This Court has subject matter jurisdiction under the Contract Disputes Act, 41 U.S.C. § 7104(b), and the Indian Self-Determination and Education Assistance Act ("ISDEAA"), 25 U.S.C. § 5331(a), which provides original jurisdiction to United States district courts, concurrent with the Court of Federal Claims, over civil actions for money damages arising under ISDEAA contracts.

## INTRODUCTION AND SUMMARY

Plaintiff Ketchikan Indian Community, for its cause of action against the Defendants named above, alleges as follows:

1. This is a suit against the United States for breach of contract and statute by the Indian Health Service ("IHS"), an agency in the U.S. Department of Health and Human Services. Plaintiff, the Ketchikan Indian Community ("Community" or "KIC"), seeks money damages under the Contract Disputes Act, 41 U.S.C. §§ 7101-7109, and declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and 25 U.S.C. § 5331(a), based on the Secretary's violation of the Community's contractual and statutory right to the payment of full funding of contract support costs ("CSC") for a Compact and Funding Agreement entered into under the ISDEAA, Pub. L. No. 93-638, as amended, 25 U.S.C. §§ 5301-5399.

2. The Supreme Court has held that the United States' failure to pay the full CSC associated with its ISDEAA agreements constitutes a violation of law and breach of contract. *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 185 (2012) ("[W]e hold that the Government must pay each tribe's contract support costs in full."); *Cherokee Nation v. Leavitt*, 543 U.S. 631, 634 (2005) ("The [ISDEAA] specifies that the Government must pay a tribe's costs, including administrative expenses.").

3. Defendants breached the Community's agreements and violated the ISDEAA by failing to pay the full CSC owed to the Community under the statute and the Community's Compact and Funding Agreement for calendar year ("CY") 2013.

4. Defendants paid only a portion of the CSC owed under the Community's contracts, due to their misinterpretation of the ISDEAA. Specifically, IHS failed to pay CSC associated with the portion of the Community's health care program funded with third-party revenues—payments from Medicare, Medicaid, private insurers, and others.

5. This action challenges IHS's denial of the Community's Contract Disputes Act claim for CY 2013 and seeks damages and other relief.

**JURISDICTION AND VENUE**

6. This controversy arises under agreements between the United States and the Community for the operation of federal health programs for Indians carried out pursuant to the ISDEAA. This Court has subject matter jurisdiction under the Contract Disputes Act, 41 U.S.C. § 7104(b), and the ISDEAA. *See* 25 U.S.C. § 5331(a) (providing original

*Ketchikan Indian Community v. Cochran et al.,* Case No. _____
COMPLAINT - 3 -

Case 3:21-cv-00028-SLG   Document 1   Filed 02/12/21   Page 3 of 17

jurisdiction to United States district courts, concurrent with the Court of Federal Claims, over civil actions for money damages arising under ISDEAA contracts).

7. In a letter dated December 16, 2019, the Community requested an IHS contracting officer's decision on a claim for underpaid CSC in CY 2013. In a letter dated February 13, 2020, IHS denied the Community's claim. The Community has filed this action within 12 months of receipt of the IHS decision, as required by the Contract Disputes Act. 41 U.S.C. § 7104(b)(3).

8. This Court has jurisdiction to review the IHS's decision on the CY 2013 claim under the Contract Disputes Act and Section 110 of the ISDEAA. 41 U.S.C. § 7104(b); 25 U.S.C. § 5331(a); 25 U.S.C. § 5331(d).

9. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district and because all defendants are subject to this Court's exercise of personal jurisdiction.

## PARTIES

10. Plaintiff Ketchikan Indian Community is a federally recognized tribe in Ketchikan, Alaska, and is an "Indian tribe" eligible to contract and compact with IHS under the ISDEAA. *See* 25 U.S.C. § 5304(e). The Community carries out a range of health care programs, functions, services, and activities ("PFSAs") at Ketchikan Indian Community Tribal Health Clinic and other locations on Revillagigedo Island. Since

1998, the Community has been a co-signer of the Alaska Tribal Health Compact with the IHS under the ISDEAA to carry out these PFSAs.

11. Defendant Norris Cochran, the Acting Secretary of Health and Human Services ("Secretary"), has overall responsibility for carrying out all the functions, responsibilities, authorities, and duties of the U.S. Department of Health and Human Services, including oversight of the IHS, an agency within the Department. He is sued in his official capacity.

12. Defendant Elizabeth Fowler is the Acting Director of the IHS, the agency charged by law with the responsibility for implementing, on behalf of the United States, the ISDEAA and other health laws benefiting American Indians and Alaska Natives. 25 U.S.C. § 1661(c)(3). She is sued in her official capacity.

13. Defendant United States is a party to the Community's ISDEAA agreements. *See* Alaska Tribal Health Compact Between Certain Alaska Native Tribes and the United States of America ("Compact"); Funding Agreement Between the Ketchikan Indian Community and the Secretary of Health and Human Services of the United States of America ("Funding Agreement"). The Community's Funding Agreement for CY 2011 remained in effect in CY 2013. See Funding Agreement, § 16.0 (agreement remains in effect until subsequent agreement is negotiated and becomes effective).

*Ketchikan Indian Community v. Cochran et al.,* Case No. _____
COMPLAINT - 5 -

Case 3:21-cv-00028-SLG   Document 1   Filed 02/12/21   Page 5 of 17

## STATUTORY BACKGROUND: THE ISDEAA

14.  During CY 2013, the Community provided health care services to eligible Alaska Natives, American Indians, and other eligible beneficiaries pursuant to its Compact and Funding Agreement authorized by Title V of the ISDEAA, 25 U.S.C. §§ 5381-5399.

15.  The ISDEAA authorizes the Community, other tribes, and tribal organizations to assume responsibility to provide PFSAs that the Secretary would otherwise be obligated to provide. In return, the Secretary must provide the Community two types of funding under Section 106(a) of the ISDEAA: (1) "program" funds, the amount the Secretary would have provided for the PFSAs had the IHS retained responsibility for them, *see* 25 U.S.C. § 5325(a)(1), sometimes called the "Secretarial amount" or the "106(a)(1) amount"; and (2) "contract support costs," the reasonable administrative and overhead costs associated with carrying out the PFSAs, *see* 25 U.S.C. § 5325(a)(2) & (3); 25 U.S.C. § 5396(a) (mandatory application of section 5325(a) through (k) to Title V agreements).

16.  There are three types of CSC: (1) pre-award and start-up costs, which are one-time costs to plan, prepare for, and assume operation of new or expanded PFSAs, *see* 25 U.S.C. § 5325(a)(5) & (6); (2) indirect CSC, which are costs incurred for a common or joint purpose benefiting more than one PFSA, such as administrative and overhead costs, *see* 25 U.S.C. § 5325(a)(2); and (3) direct CSC, which are expenses directly attributable

*Ketchikan Indian Community v. Cochran et al.,* Case No. _____
COMPLAINT - 6 -

to a certain PFSA but not captured in either the indirect cost pool or the 106(a)(1) amount, such as workers' compensation insurance or other expenses the Secretary would not have incurred because, for example, the Government is self-insured, *see* 25 U.S.C. § 5325(a)(3)(A). This action involves indirect CSC.

17. The ISDEAA requires that, upon approval of the contract, "the Secretary <u>shall add to the contract the full amount of funds</u> to which the contractor is entitled [under section 106(a) of the ISDEAA]," including CSC. 25 U.S.C. § 5325(g) (emphasis added); *see also Cherokee Nation*, 543 U.S. at 634 ("The [ISDEAA] specifies that the Government must pay a tribe's costs, including administrative expenses.").

18. The statute defines contract support costs as follows:

> The contract support costs that are eligible costs for the purposes of receiving funding under this Act shall include the costs of reimbursing each tribal contractor for reasonable and allowable costs of—
>
> > **(i)** direct program expenses for the operation of the Federal program that is the subject of the contract; and
> >
> > **(ii)** any additional administrative or other expense incurred by the governing body of the Indian Tribe or Tribal organization and any overhead expense incurred by the tribal contractor in connection with the operation of the Federal program, function, service, or activity pursuant to the contract,
>
> except that such funding shall not duplicate any funding provided under section 106(a)(1).

*Ketchikan Indian Community v. Cochran et al.,* Case No. _____
COMPLAINT - 7 -

25 U.S.C. § 5325(a)(3)(A). Thus the entire "Federal program" that is the subject of the contract—including program income from that Federal program—generates CSC requirements.

## GENERAL ALLEGATIONS

*Program Income*

19. When IHS provides direct services to eligible beneficiaries, the PFSAs are funded not only by funds appropriated by Congress, but also by third-party revenues billed to and collected from Medicare, Medicaid, the Children's Health Insurance Program, private insurers, and others. *See generally* 42 U.S.C. §§ 1395 *et seq.*, 1396 *et seq.*, 1397aa *et seq.* Each year in its budget request to Congress, IHS estimates how much third-party revenue will be collected and available to spend on services, based on past collections. *See, e.g.*, Dep't of Health & Human Servs., *Indian Health Service FY 2021 Justification of Estimates for Appropriations Committees*, at CJ-188 (reporting that in FY 2020, IHS collected an estimated $1.194 billion from third-party insurers). "Public and private collections represent a significant portion of the IHS and Tribal health care delivery budgets"—often 60% or more. *Id*.

20. By the same token, the Community, when carrying out PFSAs under its Compact and Funding Agreement, is required by law and contract to collect third-party revenues and use them to provide further services within the scope of the agreements with IHS. Title V of the ISDEAA mandates as follows:

(j) PROGRAM INCOME.—All Medicare, Medicaid, or other program income earned by an Indian tribe shall be treated as supplemental funding to that negotiated in the funding agreement. The Indian tribe may retain all such income and expend such funds in the current year or in future years except to the extent that the Indian Health Care Improvement Act (25 U.S.C. 1601 *et seq.*) provides otherwise for Medicare and Medicaid receipts. Such funds shall not result in any offset or reduction in the amount of funds the Indian tribe is authorized to receive under its funding agreement in the year the program income is received or for any subsequent fiscal year.

25 U.S.C. § 5388(j). Thus, by law, these third-party revenue funds are part of the Federal program carried out by the Community under its ISDEAA agreements. *See Navajo Health Foundation—Sage Memorial Hospital, Inc. v. Burwell*, 263 F. Supp. 3d 1083, 1166-67 (D.N.M. 2016); *Pyramid Lake Paiute Community v. Burwell*, 70 F. Supp. 3d 534, 544 (D.D.C. 2014). *But see Swinomish Indian Tribal Community v. Azar*, 406 F. Supp. 3d 18 (D.D.C. 2019).

21. Similarly, the Alaska Tribal Health Compact provides as follows:

All Medicare, Medicaid or other program income earned by a Co-Signer shall be treated as additional supplemental funding to that negotiated in the Funding Agreement and the Co-Signer may retain all such income, including Medicare/Medicaid, and expend such funds in the current year or in future years nor shall such funds result in any off-set or reduction in the negotiated amount of the Funding Agreement. Medicare/Medicaid collections of a Co-Signer under Title IV of Public Law 94-437, as amended, shall be used by the Co-Signer in accordance with any applicable statutory restrictions on the use of such funds.

Alaska Tribal Health Compact Between Certain Alaska Native Tribes and the United States of America, Art. III, § 7.

*Ketchikan Indian Community v. Cochran et al.,* Case No. _____
COMPLAINT - 9 -

22. The Community's Funding Agreement with IHS provides that all third-party revenues "shall be the property of the KIC and shall be considered program income to be utilized by the KIC as provided in Article III, section 7 of the Compact." Funding Agreement, § 12.1 ("Third Party Revenues").

23. All third-party revenue or "program income" must be, and is, expended on PFSAs included in the Community's Funding Agreement with IHS. 25 U.S.C. § 5325(m) (program income "shall be used by the tribal organization to further the general purposes of the contract; and . . . shall not be a basis for reducing the amount of funds otherwise obligated to the contract"); 42 C.F.R. § 137.110 ("All Medicare, Medicaid, or other program income earned by a Self-Governance Tribe shall be treated as supplemental funding to that negotiated in the funding agreement.").

24. The IHS's Indian Health Manual ("IHM") acknowledges that a tribe's "Total Health Care Program" includes the portion funded by "collections from Medicare, Medicaid, and private insurance," not just IHS appropriations. IHM § 6-3.1(G)(34). Therefore that portion must be included when calculating the amount of CSC owed to the tribe. *Id*. §§ 6-3.2(E)(1)(a)(i), (E)(1)(b), *available at* https://www.ihs.gov/ihm/pc/part-6/p6c3/.

25. The agency derives this rule from the statute itself: the entire "Federal program"—including program income—carried out by the Community under the ISDEAA generates CSC requirements. 25 U.S.C. § 5325(a)(3)(A).

*Calculation of Contract Support Costs*

26. As noted above, the ISDEAA requires IHS to pay full CSC. *Ramah*, 567 U.S. at 185; *Cherokee Nation*, 543 U.S. at 634. For the Community, as for most tribes, the full amount of indirect CSC is determined by multiplying a negotiated indirect cost rate by the amount of the direct cost base. *See* 25 U.S.C. § 5325(c)(3), (4) & (5) (requiring Secretary to report annually on tribes' indirect cost rates and direct cost bases); *Cherokee Nation*, 543 U.S. at 635 ("Most contract support costs are indirect costs 'generally calculated by applying an "indirect cost rate" to the amount of funds otherwise payable to the Tribe.'")

27. The Community's 2013 indirect cost rate agreement with the Department of the Interior's Interior Business Center, which applies government-wide, calls for an indirect cost rate of 29.11% on a direct cost base comprised of total direct costs, less capital expenditures and passthrough funds.

28. IHS accepts the Community's rate, as it must. The controversy is over the amount of the direct cost base. Specifically, the issue is whether third-party revenues expended to provide services within the scope of the Community's ISDEAA agreements are part of the direct cost base and therefore generate CSC requirements. IHS argues, in its decision denying the Community's claims, that only federal program funds "transferred" by IHS to the Community are eligible for contract support. Decision Letter at 4. But the ISDEAA does not use the term "transferred"; rather, CSC is defined as the

*Ketchikan Indian Community v. Cochran et al.,* Case No. _____
COMPLAINT - 11 -

reasonable and non-duplicative costs, direct and indirect, of carrying out the "Federal program" under the contract.

29. Similarly, IHS argued that only the Secretarial amount generates CSC, and the Secretarial amount is limited to funding for PFSAs transferred under the ISDEAA agreement. Decision Letter at 4. But the ISDEAA says that the Secretarial amount includes all resources the Secretary "would have otherwise provided" to carry out the PFSAs himself. 25 U.S.C. § 5325(a)(1). As noted above, the Secretary uses third-party revenues to carry out PFSAs when he directly provides services to beneficiaries, so these resources are part of the Secretarial amount. *Pyramid Lake Paiute Community*, 70 F. Supp. 3d at 544 ("[T]he applicable funding level for a contract proposal under [the ISDEAA] is determined based on what the Secretary otherwise would have spent, not on the source of the funds the Secretary uses."); *Navajo Health Foundation—Sage Memorial Hospital, Inc. v. Burwell*, 263 F. Supp. 3d at 1166–67.

30. Yet in CY 2013, IHS paid no CSC in support of health care services funded by third-party revenues, giving rise to the damages described next.

31. As documented in the Community's 2013 audited financial records, in CY 2013 the Community expended $2,414,601 in third-party revenues associated with IHS programs. Moss Adams, LLP, *Report of Independent Auditors and Basic Financial Statements with Supplementary Information for Ketchikan Indian Corporation, Year Ended December 31, 2013* at 7. Of that amount, $617,422 was spent on contracts and

*Ketchikan Indian Community v. Cochran et al.,* Case No. _____
COMPLAINT - 12 -

passthrough, leaving a third-party direct cost base of $1,797,179.[1]  IHS paid no CSC in support of those funds, giving rise to the following damages.  Applying the Community's negotiated indirect cost rate of 29.11% to third-party expenditures of $1,797,179 yields a claim for unpaid indirect CSC in the amount of $523,159.

*Procedural History of the Claims*

32. In the letter dated December 16, 2019, the Community requested a contracting officer's decision on the claims for unpaid CY 2013 CSC described above.  Specifically, the Community asserted that "IHS failed to pay CSC associated with the portion of KIC's federal health care program funded by third-party revenues, such as payments from Medicare, Medicaid, and private insurance."  Claim Letter at 2.

33. IHS denied the Community's claims in a letter dated February 13, 2020.  In the denial letter, IHS argues that the program amount generating CSC needs is limited to appropriated funds transferred in the Funding Agreement and may not include third-party collections.

34. The Community filed this action within twelve months of receipt of the IHS decision, as authorized by the Contract Disputes Act.  41 U.S.C. § 7104(b)(3).

---

[1] Actual exclusions assignable to 2013 third-party revenues were calculated in the 2015 indirect cost rate proposal on a prorated basis of 21%.

*Ketchikan Indian Community v. Cochran et al.,* Case No. _____
COMPLAINT - 13 -

*Rule of Construction*

35. The ISDEAA incorporates its own rule of interpretation: "Each provision of [Title V] and each provision of a compact or funding agreement shall be liberally construed for the benefit of the Indian tribe participating in self-governance and any ambiguity shall be resolved in favor of the Indian tribe." 25 U.S.C. § 5392(f). Applying a similar interpretive rule from Title I, the Supreme Court has said that the government "must demonstrate that its reading [of the ISDEAA] is clearly required by the statutory language." *Salazar v. Ramah Navajo Chapter*, 567 U.S. at 194.

## COUNT I – Violation of the ISDEAA

36. All prior allegations are adopted by reference as if fully set forth here.

37. The ISDEAA requires IHS to pay the Community's contract support costs in full. 25 U.S.C. § 5325(a) & (g); *Salazar v. Ramah Navajo Chapter*, 567 U.S. at 185.

38. IHS failed to pay indirect CSC on that portion of the Federal program composed of third-party revenues expended to provide services under the Funding Agreement.

39. In doing so, IHS violated the ISDEAA.

40. As a result of IHS's violation of the ISDEAA, the Community sustained damages totaling $523,159 in CY 2013.

41. Defendants are liable to the Community, under 25 U.S.C. § 5331(a), for its CY 2013 total damages of $523,159.

*Ketchikan Indian Community v. Cochran et al.,* Case No. _____
COMPLAINT - 14 -

## COUNT II – Breach of Contract

42. All prior allegations are adopted by reference as if fully set forth here.

43. The Community's Compact and Funding Agreement incorporate the statutory duty to fully fund CSC. *See* CY 2013 Funding Agreement, § 4.4 ("For purposes of this FA, IHS will comply with Sections 508(c), 519(b) and 106 of the [ISDEAA] . . . ."). The ISDEAA, in turn, requires fully funding CSC, a duty affirmed by the Supreme Court in *Ramah* and *Cherokee*, *supra*.

44. By failing to pay indirect CSC on the third-party-revenue-funded portion of the Federal program, the IHS breached its contractual agreements with the Community.

45. As a result of IHS's breach of its contractual agreements, the Community sustained damages totaling $523,159 in CY 2013.

46. The Community therefore seeks an award of damages in the total amount of $523,159 under the ISDEAA, 25 U.S.C. § 5331(a) & (d), and the Contract Disputes Act, 41 U.S.C. §§ 7101-7109.

## COUNT III – Declaratory Relief

47. All prior allegations are adopted by reference as if fully set forth here.

48. The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes this Court to grant declaratory relief. *See also* 25 U.S.C. § 5331(a).

49. IHS refuses to pay CSC in support of health care services within the scope of the ISDEAA funding agreement but funded by program income, in violation of the ISDEAA mandate that CSC supports the entire Federal program.

50. In the Denial Letter IHS limits the "Secretarial amount" to which CSC "shall be added" to include only those funds appropriated by Congress and transferred by IHS to the Community. But Section 106(a)(2) of the ISDEAA commands that CSC "shall be added" to the Secretarial amount that would otherwise be used by IHS to fund health care services. 25 U.S.C. § 5325(a)(2). When providing health care services directly to Indians and other beneficiaries, the Secretary uses not only funds appropriated by Congress, but also third-party revenues. In carrying out its Compact and Funding Agreement, the Community is required by law and contract to do the same.

51. Therefore, the Community is entitled to an Order declaring that program income expended within the scope of the ISDEAA agreement is part of the Federal program entitled to contract support and part of the Secretarial amount to which CSC "shall be added." 25 U.S.C. § 5325(a)(2), (3).

## PRAYER FOR RELIEF

52. The Community respectfully requests the Court grant relief as follows:

    A. Award the Community $523,159 in damages for unpaid indirect CSC;

    B. Award such other damages as may be proven in this action;

C. Declare that IHS must pay CSC on the entire Federal program and Secretarial amount, including third-party revenues expended on health care services within the scope of the Community's Compact and Funding Agreement;

D. Order the payment of interest on these claims pursuant to the Contract Disputes Act, 41 U.S.C. § 7109;

E. Award the Community its attorney fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 and 25 U.S.C. § 5331(c), and other applicable law; and

F. Grant the Community such other and further relief as the Court deems appropriate.

DATED: February 12, 2021

Respectfully Submitted,

Geoffrey D. Strommer
Stephen D. Osborne
Hobbs, Straus, Dean & Walker, LLP
*Attorneys for Ketchikan Indian Community*

By: /s/ Geoffrey D. Strommer
Geoffrey D. Strommer (AK Bar # 0911044)
Stephen D. Osborne (AK Bar # 1108062)

DATED: February 12, 2021.

*Ketchikan Indian Community v. Cochran et al.,* Case No. _____
COMPLAINT - 17 -